UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TINA M. C.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:21-cv-055 |
| | ) |
| KILOLO KIJAKAZI[2], | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the

Commissioner filed by the plaintiff, Tina C., on February 12, 2021.  For the following reasons,

the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Tina C., filed applications for Disability Insurance Benefits and

Supplemental Security Income, alleging a disability onset date of April 1, 2016.  (Tr. 11).  The

Disability Determination Bureau denied Tina C.'s applications initially on April 23, 2019, and

again upon reconsideration on August 22, 2019.  (Tr. 11, 110-11, 148-49).  Tina C. subsequently

filed a timely request for a hearing on October 10, 2019.  (Tr. 188-89).  A hearing was held on

June 24, 2020, before Administrative Law Judge (ALJ) Cindy Martin.  (Tr. 47).  Vocational

Expert (VE) Helen Topcik also appeared at the hearing.  (Tr. 47).  The ALJ issued an

unfavorable decision on September 1, 2020.  (Tr. 11-24).  The Appeals Council denied review

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.
[2] Andrew M. Saul was the original Defendant in this case.  He was sued in his capacity as a public officer.
On July 9, 2021, Kilolo Kijakazi became the acting Commissioner of Social Security. Pursuant to
**Federal Rule of Civil Procedure 25(d)**, Kilolo Kijakazi has been automatically substituted as a party.

making the ALJ's decision the final decision of the Commissioner.  (Tr. 1-6).

First, the ALJ found that Tina C. met the insured status requirements of the Social

Security Act through March 31, 2020.  (Tr. 13).  At step one of the five-step sequential analysis

for determining whether an individual is disabled, the ALJ found that Tina C. had not engaged in

substantial activity since April 1, 2016, the alleged onset date.  (Tr. 13).

At step two, the ALJ determined that Tina C. had the following severe impairments:

degenerative disc disease of the cervical and lumbar spine, stats post decompression at the L4-L5

level in May 2018; peripheral venous insufficiency, status post ablation; carpal tunnel syndrome

bilaterally; depressive disorder including bipolar disorder; and anxiety disorder.  (Tr. 13-14).

Tina C. also alleged disability due to headache disorder and plantar fasciitis.  (Tr. 14).  However,

the ALJ indicated that those impairments caused no more than minimal limitations on her ability

to engage in basic work activities, and therefore considered them non-severe.  (Tr. 14).  The ALJ

also found that Tina C.'s breathing impairments and reflex sympathetic dystrophy were non-

medically determinable impairments.  (Tr. 14).

At step three, the ALJ concluded that Tina C. did not have an impairment or combination

of impairments that met or medically equaled the severity of one of the listed impairments in 20

CFR Part 404, Subpart P, Appendix 1.  (Tr. 15-17).  The ALJ found that no medical evidence

indicated diagnostic findings that satisfied any listed impairment.  (Tr. 15-17).

After consideration of the entire record, the ALJ then assessed Tina C.'s residual

functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform light
> work as defined in 20 CFR 404.1567(b)and 416.967(b) except can
> occasionally climb stairs and ramps, but cannot climb ladders, ropes,
> and scaffolds.  The claimant can occasionally balance, stoop, kneel,
> crouch, and crawl.  The claimant can frequently reach, handle,
> finger, and feel with the bilateral upper extremities.  The claimant

> can understand, remember, and carry out simple tasks, make simple work related decisions, and deal with occasional changes in work processes and environment.  The claimant cannot work at a production rate pace, but can perform end of the day goals.  The claimant cannot work with the general public and is limited to occasional interaction with coworkers and supervisors.  The claimant is limit[ed] to more than occasional exposure to loud noise as defined in the *Selected Characteristics of Occupations*.

(Tr. 17).  After considering the evidence, the ALJ found that Tina C.'s medically determinable impairments reasonably could have been expected to cause the alleged symptoms.  (Tr. 18).  However, she found that the Tina C.'s statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (Tr. 18).

At step four, the ALJ found that Tina C. was unable to perform any past relevant work.  (Tr. 22).  However, the ALJ found jobs that existed in significant numbers in the national economy that Tina C. could perform.  (Tr. 23-24).  Therefore, the ALJ found that Tina C. had not been under a disability, as defined in the Social Security Act, from April 1, 2016, through the date of the her decision.  (Tr. 24).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence.  **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence.").  Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to

support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28

L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206,

217, 83 L. Ed. 2d 140 (1938)); *see **Bates***, 736 F.3d at 1098.  A court must affirm an ALJ's

decision if the ALJ supported her findings with substantial evidence and if there have been no

errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted).  However,

"the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues."

***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish

"disability" under the terms of the Social Security Act.  The claimant must show that she is

unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." **42 U.S.C.**

**§ 423(d)(1)(A)**.  The Social Security regulations enumerate the five-step sequential evaluation to

be followed when determining whether a claimant has met the burden of establishing disability.

**20 C.F.R. §§ 404.1520, 416.920**.  The ALJ first considers whether the claimant is presently

employed and "doing . . .  substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**.

If she is, the claimant is not disabled, and the evaluation process is over.  If she is not, the ALJ

next addresses whether the claimant has a severe impairment or combination of impairments that

"significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§**

**404.1520(c), 416.920(c)**; *see **Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing

that the ALJ must consider the combined effects of the claimant's impairments).  Third, the ALJ

determines whether that severe impairment meets any of the impairments listed in the

regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**.  If it does, then the impairment is

acknowledged by the Commissioner to be conclusively disabling.  However, if the impairment

does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual

functional capacity" and the physical and mental demands of her past work.  If, at this fourth

step, the claimant can perform her past relevant work, she will be found not disabled.  **20 C.F.R.**

**§§ 404.1520(e), 416.920(e)**.  However, if the claimant shows that her impairment is so severe

that she is unable to engage in her past relevant work, then the burden of proof shifts to the

Commissioner to establish that the claimant, in light of her age, education, job experience, and

functional capacity to work, is capable of performing other work and that such work exists in the

national economy.  **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**; *see **Biestek v.***

***Berryhill,*** 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational

expert's refusal to provide the private market-survey data underlying her opinion regarding job

availability does not categorically preclude the expert's testimony from counting as "substantial

evidence" but, instead, the inquiry is case-by-case).

Tina C. has requested that the court remand this matter for additional proceedings.  In her

appeal, Tina C. alleges that the ALJ erred in evaluating medical opinion evidence, in making the

RFC determination, and in evaluating her subjective symptoms.   Of the three arguments, the

court finds it necessary to address only the second and third.

In her second argument, Tina C. claims that the ALJ erred in evaluating her bilateral

carpal tunnel syndrome and in finding that she could frequently use her upper extremities.  The

ALJ determined that Tina C. could frequently reach, handle, finger, and feel with the bilateral

upper extremities.  (Tr. 17).  In discussing her carpal tunnel, the ALJ found as follows:

> "[Tina C.] retained normal grip strength and good fine finger manipulative
> ability during her consultative examination [Tr. 549].  Upper extremity
> exam normal with normal shoulder range of motion and normal hand
> examination [Tr. 398-99, 405, 461]. Tinel's was positive at the wrist

bilaterally, but she had active range of motion."

(Tr. 19).  Outside of the consultative examination, the ALJ cited to three treatment notes, all of

which occurred in May 2018 and were from follow up visits for a lumbar decompression. (Tr.

398-99, 405, 461).  Therefore, the notes relied on only focused on Tina C.'s lumbar symptoms.

Although the ALJ correctly noted that Tina C. showed full range of motion in her wrists and

normal hand examinations at those visits, the ALJ ignored other portions of the treatment notes.

For example, the physician noted that Tina C. presented with bilateral fingertip numbness and

pricking sensation.  (Tr. 400, 402).

More concerning to the court, as it pertains to the ALJ's reliance on the May 2018 notes,

is that other medical records directly contradicted them.  First, the ALJ ignored the link between

cervical nerve compression and carpal tunnel syndrome, which caused similar symptoms and

limitations.[3]  The median nerve, when compressed in the carpal tunnel at the wrist, causes carpal

tunnel syndrome that runs all the way up through the cervical spine.  If compressed in the

cervical spine at the nerve roots, it can be aggravated by a more minimal compression at the

wrist.  The ALJ listed Tina C.'s cervical medical evidence in the decision, but she provided no

analysis as to how that medical evidence was supported by the RFC.  (Tr. 18).  Next, the ALJ

acknowledged that Tina C. had shown cervical disc disease since an August 2014 MRI, but a

November 2019 MRI showed worsening symptoms including multilevel spondylosis of the

cervical spine and mild central stenosis from C1 through C7 with neural foraminal narrowing.

(Tr. 18, 770).  The ALJ did not mention that the MRI further showed posterior osteophyte disc

complexes or bilateral facet arthropathy at multiple levels.  (Tr. 770).

---

[3] Bethany Wink, *Carpal Tunnel Syndrome vs. Cervical Radiculopathy*, THREE RIVERS ORTHOPEDIC
ASSOCIATES, (2017) https://3riversortho.com/2017/03/06/carpal-tunnel-syndrome-vs-cercial-
raduclopathy/; *Carpal Tunnel*, UPPER CERVICAL CARE, https://www.uppercervicalcare.com/carpal-tunnel
(last visited July 21, 2022).

Evidence in the record repeatedly has shown impairments to the nerves of Tina C.'s cervical spine.  In May 2019, she had severe pain with range of motion maneuvers of the cervical spine, as well as positive Spurling test[4] on both the left and right.  (Tr. 675).  In June 2019, Tina C. had a positive Valsalva's test, distraction test, and Jackson compression test.  (Tr. 664, 683-84).  All three of those tests are used to detect cervical radiculopathy.[5]  In December 2019, records from the pain management center stated that Tina C.'s pain had failed conservative treatment measures and, again, showed positive Spurling tests bilaterally and severe pain with range of motion in the cervical spine.  (Tr. 767).  Her pain medication was increased at that visit as her "cervical and lumbar pain [were] not well controlled at th[at] time."  (Tr. 768).  In January 2020, her physician noted that her cervical epidural was denied by insurance.  (Tr. 774).

The ALJ ignored the above stated evidence of cervical radiculopathy and nerve impingement, which caused similar symptoms to carpal tunnel syndrome and would likely have exacerbated Tina C.'s symptoms.  In doing so, the ALJ failed to build a logical bridge from the evidence regarding Tina C.'s carpal tunnel and cervical nerve impingement to the limitations in the RFC that allowed for frequent reaching, handling, fingering, and feeling.  ***Clifford v. Apfel***, 227 F.3d 863, 871 (7th Cir. 2000) (the ALJ "must build an accurate and logical bridge from the evidence to h[er] conclusion").  Furthermore, the ALJ ignored relevant evidence of Tina C.'s carpal tunnel syndrome.  In April 2020, a clinician noted that her carpal tunnel was failing conservative care.  (Tr. 780-81).  The clinician also stated that there was clinical evidence of

---

[4] The Spurling test is used as a measure to detect cervical nerve root compression and cervical radiculopathy. *Spurling Test*, ORTHOFIXAR, https://orthofixar.com/special-test/spurling-test/ (last visited July 21, 2022).

[5] *Valsalva Test*, AMERICAN PHYSICAL THERAPY ASSOCIATION, https://www.apta.org/patient-care/evidence-based-practice-resources/test-measures/valsalva-test (last visited July 21, 2022); https://www.physio-pedia.com/cervical_distraction_test (accessed July 14, 2022); *Jackson Compression Test*, PHYSIO-STUDY, https://physio-study.com/jackson-compression-test (last visited July 21, 2022).

underlying inflammation and compression of the median nerve and, therefore, suggested

injections to mitigate inflammation. (Tr. 781). The ALJ failed to mention that evidence.

The ALJ relied on the consultative examination, which showed normal range of motion

and supposed normal grip strength. (Tr. 19). At the consultative examination, Dr. Smejkal noted

full range and full strength in all upper major muscle groups, as well as normal grip strength

bilaterally with good fine finger manipulative abilities. (Tr. 549). Dynamometer testing showed

that Tina C. could generate 9.2 kilograms of force with the right hand and 9.1 kilograms of force

with the left hand. (Tr. 549). While Dr. Smejkal stated that Tina C.'s grip strength was normal

bilaterally, the objective dynamometer testing did not support that finding. In looking at a

variety of studies of average grip strength, a female of Tina C.'s age should have had an average

grip strength of 18.6 kg – 32.4 kg, with anything below 18.6 kg being labeled as "weak."[6] The

ALJ failed to acknowledge or explain the contradiction between a finding of normal grip strength

and the objective dynamometer testing, which showed her grip strength at just over half of what

is considered "weak." This error compounds the ALJ's error in cherry-picking evidence to

support the RFC determination.

The ALJ also erred in discussing Tina C.'s subjective symptoms. An ALJ's evaluation of

subjective symptoms will be upheld unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d

306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must explain her evaluation with specific

reasons that are supported by the record. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

Under **SSR 16-3p**, 2016 SSR LEXIS 4, an ALJ must assess the claimant's subjective symptoms

---

[6] *Handgrip Strength Norms*, TOPEND SPORTS, https://www.topendsports.com/testing/norms/handgrip.htm (last visited July 21, 2022); V. Mathiowetz, M.S., O.T.R., et al., *Grip and Pinch Strength: Normative Data for Adults,* ARCH. PHYS. MED. REHABIL., 66:69-72 (1985); Martine J. H. Peters et al., *Revised Normative Values for Grip Strength with the Jamar Dynamometer*, JOURNAL OF THE PERIPHERAL NERVOUS SYSTEM, 16:47-50 (2011).

rather than assessing her "credibility."

In doing so, the ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce her symptoms. **SSR 16-3p**, 2016 SSR LEXIS 4, 2016 WL 1119029, at \*2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." **SSR 16-3p**, 2016 SSR LEXIS 4, 2016 WL 1119029, at \*2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. **SSR 16-3p**, 2016 SSR LEXIS 4, 2016 WL 1119029 at \*5. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. **SSR 16-3p**, 2016 SSR LEXIS 4, 2016 WL 1119029, at \*4, 9. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(i)     The individual's daily activities;
(ii)    Location, duration, frequency, and intensity of pain or other symptoms;
(iii)   Precipitating and aggravating factors;
(iv)    Type, dosage, effectiveness, and side effects of any medication;
(v)     Treatment, other than medication, for relief of pain or other symptoms;
(vi)    Other measures taken to relieve pain or other symptoms;
(vii)   Other factors concerning functional limitations due to pain or other symptoms.

*See* **20 C.F.R. §404.1529(c)(3).**

The ALJ must justify her assessment with "specific reasons supported by the record." ***Pepper v. Colvin***, 712 F.3d 351, 367 (7th Cir. 2013). Moreover, "the ALJ must explain her [subjective symptoms evaluation] in such a way that allows [the Court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the

evidence in the record." ***Murphy v. Colvin***, 759 F.3d 811, 816 (7th Cir. 2014); *see* SSR 16-30,

2016 SSR LEXIS 4, 2017 WL 5180304, at *10 (Oct. 25, 2017) (The ALJ's decision "must

contain specific reasons for the weight given to the individual's symptoms, be consistent with

and supported by the evidence, and be clearly articulated so the individual and any subsequent

reviewer can assess how the adjudicator evaluated the individual's symptoms"). "[T]he absence

of objective medical corroboration for a complainant's subjective accounts of pain does not

permit an ALJ to disregard those accounts." ***Ghiselli v. Colvin***, 837 F.3d 771, 777 (7th Cir.

2016); *see also* ***Moore v. Colvin***, 743 F.3d 1118, 1125 (7th Cir. 2014) ("[T]he ALJ erred in

rejecting [the plaintiff]'s testimony on the basis that it cannot be objectively verified with any

reasonable degree of certainty.  An ALJ must consider subjective complaints of pain if a

claimant has established a medically determined impairment that could reasonably be expected

to produce the pain").

The ALJ did not address Tina C.'s complaints of pain, and instead spent time analyzing

her complaints of muscle weakness, difficulties with ambulation, and grip strength.  (Tr. 19).

The ALJ provided no analysis regarding her complaints of pain, other than to state that she

"displayed" pain and found that the records specifically stated she did not need an assistive

device.  (Tr. 19).  The record repeatedly supported Tina C.'s complaints of pain, yet the ALJ

provided no explanation for why she found that the "clinical signs do not fully support [Tina

C.'s] allegations of disability."  (Tr. 19).  The record shows tenderness of the paracervicals,

trapezius, and levator scapulae, as well as tenderness and reduced range of motion in the lumbar

spine.  (Tr. 664).  The medical record also mentioned multiple times throughout 2019 that Tina

C.'s cervical and lumbar spine impairments had failed conservative treatment, along with severe

pain with range of motion maneuvers of the lumbar and cervical spine.  (Tr. 668, 675-76, 760,

767).  She also displayed guarded ambulation regularly.  (Tr. 668, 675, 780).  In August 2019, the clinician noted that Tina C. was "visibly uncomfortable" with pain and weakness in her left leg.  (Tr. 718).  In December 2019, the clinician stated that her cervical and lumbar pain were not well controlled.  (Tr. 768).  The ALJ provided no discussion of these records, all of which supported Tina C.'s allegations of pain.  Ultimately, the ALJ failed to properly discuss or analyze Tina C.'s complaints of pain yet found that her pain was less limiting than she alleged due to an ability to ambulate without an assistive device.  The Court cannot determine whether the ALJ properly considered the relevant evidence when it was not discussed or analyzed in the decision, therefore remand is required.

Tina C. makes other arguments regarding medical opinion evidence and limitations in the RFC.  However, because the ALJ erred in discussing her limitations related to her carpal tunnel syndrome and in analyzing her subjective symptoms, the court need not address the additional arguments at this time.  The ALJ's failure to properly analyze Tina C.'s subjective symptoms and severe impairments may alter the view of the RFC and medical opinion evidence.  The ALJ will have the opportunity to revisit these other issues on remand.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED**.

ENTERED this 21st day of July, 2022.

/s/ Andrew P. Rodovich
United States Magistrate Judge